UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANITA KAY KUSKE,            )<br>    Plaintiff,            )<br>                                        )<br>    v.                              )<br>                                        )<br>JO ANNE B. BARNHART,      )<br>Commissioner of the Social Security )<br>Administration,                    )<br>    Defendant.            ) | CAUSE NO.: 2:04-CV-469-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by the *pro se* Plaintiff, Anita Kay Kuske, on November 12, 2004, and on a letter [DE 14] filed on January 28, 2005 by Ms. Kuske, and a letter [DE 17], filed on April 29, 2005 by Ms Kuske.  Ms. Kuske seeks judicial review of a final decision of the Defendant, the Commissioner of the Social Security Administration, in which Jones was denied Supplemental Security Income Benefits ("SSI") under Section 1381a of the Social Security Act.  For the following reasons, the Court denies Ms. Kuske's request to reverse and remand the decision of the Commissioner.

**PROCEDURAL BACKGROUND**

On February 5, 2002, Ms. Kuske filed an application for SSI.  The application was denied initially and upon reconsideration.  Ms. Kuske then filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  The hearing before ALJ William Wilkin was conducted on March 26, 2005.  At the hearing, testimony was heard from Ms. Kuske (*pro se*), a vocational expert ("VE"), and another witness. Subsequently, the ALJ added additional evidence into the record, including the results of a consultative examination.  On July 1, 2004, the ALJ held a supplemental

hearing at Ms. Kuske's request, at which Ms. Kuske testified. On July 13, 2004, the ALJ issued a decision, finding that Ms. Kuske was not disabled. The ALJ made the following findings:

(1) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(2) The claimant has the following "severe" impairments, based on the requirements in 20 CFR § 416.920(b): degenerative joint disease involving the knees, right shoulder and lumbosacral spine; and obesity.

(3) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(4) The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

(5) The claimant has the following residual functional capacity: she can lift a maximum of 10 pounds at a time, and occasionally carry items such as docket files, small tools and ledgers. In addition, the claimant can occasionally stand and walk. However, she cannot repetitively walk, bend, stoop, crawl or climb, and she must be allowed to change positions at will.

(6) The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).

(7) The claimant is a "younger individual" (20 CFR § 416.963).

(8) The claimant has a "marginal education" (20 CFR § 416.964).

(9) The claimant has no transferable skills from any past relevant work (20 CFR § 416.968).

(10) The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

(11) Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.18 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a hand packer (3,500 Regional jobs), a mechanical assembler (3,500 Regional jobs) and an electrical assembler (3,000 Regional jobs).

(12)  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

R. at 19-20.

On August 17, 2004, Ms. Kuske filed a Request for Review of Hearing Decision with the Appeals Council.  On September 16, 2004, the Appeals Council received additional evidence.  On September 16, 2004, the Appeals Council denied Ms. Kuske's request for review.  Therefore, the ALJ's decision of July 13, 2004, is the final decision of the Commissioner.

A Complaint was timely filed by Ms. Kuske with this Court on November 12, 2004.  On January 28, 2006, the Commissioner filed an Answer and the Administrative Record.  Also on January 28, 2005, Ms. Kuske sent a letter to the Court, which included a radiology report and a two-page, handwritten explanation of her case.  In that letter, Ms. Kuske requested that she be appointed counsel.  On March 23, 2005, the Court denied the request without prejudice and with leave to refile a motion for appointment of counsel along with a completed Questionnaire for Appointment of Counsel provided by the Court.  On April 29, 2005, Ms. Kuske sent a second letter to the Court, in which she did not renew her request for appointment of counsel.  Therefore, Ms. Kuske is proceeding *pro se*.

On January 31, 2005, the Court issued a briefing schedule ordering Ms. Kuske to file her opening brief on or before March 16, 2005, which she did not do.  On May 11, 2005, the Court vacated the January 31, 2005 Order and reset the briefing schedule, ordering Ms. Kuske to file her opening brief on or before June 17, 2005, and that if she did not comply, the Court would construe her January 28, 2005, and April 29, 2005 letters as her opening brief.  Ms. Kuske did not file an opening brief by the June 17, 2005 deadline.  Therefore, the Court construes her January 28, 2005,

3

and April 29, 2005 letters as her opening brief. On August 1, 2005, the Commissioner filed a Defendant's Memorandum in Support of Commissioner's Decision. Ms. Kuske did not file a reply.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

## FACTS

### A. Background Information

Ms. Kuske was 46 years old at the time of the ALJ's decision. Ms. Kuske attended school through the ninth grade and worked in the past as a housekeeper, retail salesperson, mail machine operator, babysitter, and kitchen helper. Ms. Kuske alleges disability due to arthritis in her hands, knees, and feet; low back pain; high cholesterol; right carpel tunnel syndrome; bursitis; a tear in her left knee; and depression.

### B. Medical Evidence[1]

The treatment notes contained in the record are from Saint Margaret Mercy Medical Associates at Douglas Park and range in date from 1999 to 2002. Ms. Kuske was primarily seen by Christopher McIntire, D.O., and C.E. Foreit, D.O., for various conditions, including osteoarthritis, degenerative joint disease, and obesity.

On January 21, 2002, Ms. Kuske complained of pain in her knees. Dr. McIntire's assessment was degenerative joint disease in the knee for which he prescribed DepoMedrol and gave her a

---

[1] The Court limits its recitation of the medical evidence to those medical conditions raised by Ms. Kuske in her letters to the Court.

4

Medrol Dosepak. On February 1, 2002, Ms. Kuske stated that the Depomedrol in the right knee had "made a big difference." R. at 240. Dr. McIntire assessed osteoarthiritis and degenerative joint disease and gave her another injection in her knee.

Ms. Kuske applied for SSI on February 5, 2002.

On February 7, 2002, x-rays of Ms. Kuske's knees demonstrated mild degenerative joint disease of the right knee and mild degenerative changes of the left knee, both demonstrating slight progression since 1999. The x-rays of her hands showed mild interphalangeal joint space narrowing of both hands, which were stable since 1999.

On February 15, 2002, Ms. Kuske again saw Dr. McIntire for followup on her arthritis. Dr. McIntire noted that she reported that her knees were still bothering her, that the right knee was improved with the DepoMedrol but that the left knee was not, and that she now had a sharp shooting pain. Dr. McIntire noted that the x-rays demonstrate that she had progressed in the arthritis. He prescribed physical therapy for her degenerative joint disease of the knees and hands and prescribed Vioxx.

On March 23, 2002, on a subsequent followup visit, Ms. Kuske reported that her pain went down from an 11 to a 2 to 4 with the physical therapy and the Vioxx. For her degenerative joint disease of the knees, Dr. McIntire indicated that she would continue with physical therapy until the end of the prescribed session and then continue with home exercises.

There are no records from March 23, 2002 until September 2003.[2]

---

[2] A radiology report dated June 7, 2002, was placed in the record. R. at 306-307. However, the patient name on the record is "James T. Parker." It appears that these pages were included with Ms. Kuske's records inadvertently. Therefore, the Court will disregard it.

On September 16, 2003, a magnetic resonance imaging ("MRI") scan of Ms. Kuske's left knee was taken after she twisted her knee and was experiencing weightbearing pain. The scan showed moderate-sized knee joint effusion, moderate degenerative change involving all three knee compartments, a sprain of the lateral patellar retinaculum, a small popliteal cyst, and suspicion of a tear of the lateral meniscus.

On March 15, 2004, Dr. McIntire wrote a letter to the ALJ confirming that Ms. Kuske must stay in a flat one-story unit due to severe osteoarthritis of both knees and lumbar area. He opined that she cannot climb stairs, walk long distances, or do any type of bending. He also opined that she could not do any lifting due to the severity of bursitis in both of her shoulders, which he believed limited her ability to gain any type of employment.

On April 20, 2004, Ms. Kuske saw Suresh Mahawar, M.D. for a consultative examination at the request of the ALJ. Ms. Kuske reported that she had pain in all joints for a long period of time and that she had been diagnosed with arthritis and bursitis in her right shoulder. She explained that the main affected areas are her knees, shoulders, and hands. She reported that her pain is constant and severe in nature and that it is worse with lifting, raising her arms, and walking. She stated that her pain gets better with rest. She reported that she is unable to walk more than half a block and is unable to climb more than one flight of stairs. At the time of the examination, she was 5'3" and weighed 309 pounds. On examination, there were no abnormalities of her upper or lower extremities or cervical, thoracic, or lumbar spine. There was no significant tenderness or muscle spasm. Straight leg raising was negative. She had 5/5 motor strength in her upper extremities, 5-/5 motor strength in her lower extremities, and 5/5 grip strength. Her fine and gross manipulations were normal. There was no evidence of redness, warmth, or effusion of any joint. There was

6

moderate crepitation on both knees.  She had normal ranges of motion, except for lumbar forward flexion (80 out of 90 degrees) and knee flexion (130 out of 150 degrees).  She was able to walk 200 to 300 feet with a mild limp without an assistive device; Dr. Mahawar noted that she might need a cane for longer walks.  She had mild difficulty getting on and off the examination table, tandem walking, and walking on her toes and heels.  Dr. Mahawar's impression was pain in both knees with arthritis and meniscus tear, shoulder and wrist pain with a history of arthritis, and obesity.

Dr. Mahawar also completed a medical source statement.  He opined that Ms. Kuske could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and stand and/or walk for 1 to 2 hours total and 15 minutes without interruption, but had no problems with sitting.  In addition, she could occasionally climb and balance, but never stoop, crouch, kneel, or crawl.  Dr. Mahawar also indicated that Ms. Kuske's ability to push and/or pull was affected and that she had environmental restrictions against humidity and vibrations, but he did not specify what those limitations were.

On April 25, 2004, a state agency physician reviewed the record and opined that Ms. Kuske could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, could stand and/or walk at least 2 hours and sit about 6 hours in an 8-hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, and crouch; and never climb ladders/ropes/scaffolds or crawl; and should avoid concentrated exposure to extreme cold and hazards.

On April 28, 2004, Ms. Kuske underwent an NST test.  The findings suggested neuropathy in her lower extremities involving the bilateral common peroneal nerve, bilateral medial calcaneal nerve, and right deep peroneal nerve; mild neuropathy in her upper extremities involving the right radial nerve; and mild neuropathy in her hands involving the ulnar nerve at the dorsum.

On April 29, 2004, Ms. Kuske underwent a physical therapy initial evaluation for her knees and shoulders. The objective findings included mildly impaired fine motor coordination in her right upper extremity and intact gross motor coordination.

### B.  Testimony of the Plaintiff

At the March 26, 2004 hearing, Ms. Kuske testified that she has trouble walking. She explained that when she walks to the office to pay her rent, a block from her house, she has to sit and rest before returning to her house. She normally uses a cane. She also testified that her pain worsens the longer she is on her feet. Ms. Kuske also showed the ALJ how high she could raise her arms from a seated position and explained that her bursitis limits her ability to raise her arms. However, her left arm is alright, although she is right handed. She testified that she was currently taking Vicodin for her pain, which made her drowsy.

Ms. Kuske testified that she has arthritis in her hands, which prevents her from writing for long periods of time. However, she can hold and use a coffee cup. She had trouble making a fist at the hearing and explained that her fingers get stiff on days that it is damp. She stated that her hands are not as bad as her knees.

Ms. Kuske testified that she takes the bus to go grocery shopping and that she walks approximately a block and a half to reach the bus stop. She cleans her house and cooks, although both take longer than they used to because of the pain. She occasionally goes out to dinner or a movie with her boyfriend.

At the July 1, 2004 hearing, Ms. Kuske testified that the consultative physician who examined her upon the request of the ALJ could not have indicated that her shoulder was normal

8

because he did not examine her shoulder. She testified that he examined her lumbar region, her knee, and her hip, but that he had not examined her shoulder because he did not have all the medical records in front of him. She further testified that she could not lift twenty pounds as indicated in his report, explaining that she could not even lift her twelve pound bowling ball. She further testified about the extent that she can extend her right arm before she feels pain. She also testified that the pain was more severe than it had been in March.

### C. Testimony of Vocational Expert

At the March 26, 2004 hearing, vocation expert Thomas Grzesik ("VE") testified. The ALJ posed a hypothetical of a forty-five year old individual with a ninth grade education who is limited to sedentary work but whose job should not require repetitive walking, bending, stooping, crawling, or climbing and should allow for a change of position at will. The VE testified that the individual would not be able to do any of the past relevant work. However, the individual would be able to perform unskilled sedentary jobs that allow for these restrictions such as hand packager (3,000 jobs), mechanical assembler (3,500 jobs), and electrical assembler (3,000 jobs).

In the second hypothetical, the ALJ gave an RFC for sedentary work with the same restrictions as the first hypothetical but added the restriction that the worker had lost the ability for fine manual dexterity in the right dominant hand, still retaining gross dexterity, and also retaining a fine manual dexterity and gross manual dexterity in the left hand. The VE testified that there would be no unskilled sedentary jobs for this individual.

In the third hypothetical, the ALJ gave an RFC for sedentary work with no prolonged standing as the only restriction. The VE testified that the individual would be able to return to the mail machine operator position.

Finally, the ALJ asked whether full-time work would be precluded if the individual could not sustain eight hours of employment. The VE testified that there would be no jobs available if that restriction were applicable.

### D.  The ALJ's Decision

The ALJ found that Ms. Kuske was capable of performing a significant range of sedentary work. Considering Ms. Kuske's age, education, past work experience, RFC, and the uncontradicted testimony of the VE, the ALJ concluded at step five that Ms. Kuske was capable of performing a significant number of jobs in the economy and, therefore, was not disabled.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard.  *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).  If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings."  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy.  42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(e), (f).

11

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The Seventh Circuit has summarized the sequence as follows:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant is capable of performing work in the national economy. Under the five-part sequential evaluation process, "[a]n affirmative answer leads either to the next step, or, on Step 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.

*Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001) (citations omitted) (alterations in original); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(iv); *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004). At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ must assess the RFC based on all the relevant evidence of record. *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, *see Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995), whereas the burden at step five is on the ALJ, *see Zurawski*, 245 F.3d at 886.

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski*,

12

245 F.3d at 888.  The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

In her letters, Ms. Kuske asserts that her pain has worsened since filing her claim, that she is disabled due to osteoarthritis that causes pain in her knees, lower back, hands, and feet, and that she has limitations greater than those found by the ALJ.  In response, the Commissioner argues that ALJ's RFC determination is supported by substantial evidence.

### A.  New Evidence

As an initial matter, the Court addresses the January 19, 2005 Radiology Report submitted by Ms. Kuske on January 28, 2005, and her statements regarding the deterioration of her health since the ALJ's decision.  This evidence was not in the record before the ALJ, and, therefore, it cannot be considered by a reviewing court for purposes of determining whether substantial evidence supports the final decision of the Commissioner.  *See Eads v. Secretary of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).  Although the Court may remand a case for consideration of new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g), Ms. Kuske has neither requested nor established the requirements for such a remand.  However, Ms. Kuske has indicated to the Court that she has filed a new claim for SSI.  Regardless, this evidence is not material, as it

post-dates the ALJ's decision by six months.  *See Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999) (to satisfy materiality requirement, additional evidence must be relevant to time period covered by ALJ's decision).  Therefore, the Court will not consider this new evidence on review of the ALJ's decision.

### B. The ALJ's Decision Is Supported by Substantial Evidence

As part of his evaluation of Ms. Kuske's impairments, the ALJ assessed her RFC, which is as assessment of what she can still do despite her limitations.  *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See id*. § 416.927(e)(2); *see also* SS Ruling 96-5p.  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence.  *See* 20 C.F.R. § 416.945(a); *see also* SSR 96-8p.

In this case, the ALJ evaluated the relevant evidence and reasonably concluded that, based on the record as a whole, Ms. Kuske retained the RFC for sedentary work[3] with additional limitations of no repetitive walking, bending, stooping, crawling, or climbing, and a sit/stand option. The ALJ's RFC finding is supported by substantial evidence in the record.  In particular, Dr. Mahawar, who examined Ms. Kuske in April 2004, opined that she could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and stand and/or walk for 1 to 2 hours total and 15

---

[3] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles such as docket files, ledgers, and small tools.  *See* 20 C.F.R. § 416.967(a).  A sedentary job generally requires up to six hours of sitting and up to two hours of standing or walking in an eight-hour workday.  *See* SSR 83-10.

minutes without interruption, but had no problems with sitting. In addition, she could occasionally climb and balance, but never stoop, crouch, kneel, or crawl. Similarly, a state agency physician reviewed the medical evidence in April 2004 and opined that Ms. Kuske could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk at least 2 hours and sit about 6 hours in an 8-hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, and crouch; never climb ladders/ropes/ scaffolds or crawl; and should avoid concentrated exposure to extreme cold and hazards. *See* 20 C.F.R. § 416.927(f)(2)(i) (explaining that the ALJ should consider opinions of state agency physicians and psychologists who are also experts in the Social Security program). Both Dr. Mahawar and the state agency physician opined that Ms. Kuske could perform the lifting and carrying requirements of light work. However, the ALJ gave Ms. Kuske the benefit of the doubt, given her right shoulder problems, and found that she could perform the lifting and carrying requirements of only sedentary work.

The ALJ's RFC finding is also supported by the objective medical evidence and Ms. Kuske's treatment history. The record showed that Ms. Kuske received relatively conservative treatment, consisting of medication, injections in her knee, and physical therapy. In fact, she did not receive treatment for over one year, from March 2002 to September 2003. In considering Ms. Kuske's hand and right shoulder symptoms, the ALJ noted that results from x-rays in February 2002 and an NST test in April 2004 showed only mild findings in her hands and arms. In addition, during his examination in April 2004, Dr. Mahawar noted normal motor strength in Ms. Kuske's upper extremities, normal grip strength, and intact fine and gross manipulative ability. Also in April 2004, a physical therapist recorded only mild impairment of Ms. Kuske's fine motor coordination in her right upper extremity and intact gross motor coordination.

With respect to Ms. Kuske's knees and back, knee x-rays in February 2002 showed moderate degenerative changes in her right knee and mild degenerative changes in her left knee. Physical therapy for Ms. Kuske's knees in spring 2002 improved her pain from 11 down to 2 to 4. An MRI scan of her left knee in September 2003 showed moderate degenerative changes with a possible tear of the lateral meniscus. When Dr. Mahawar saw Ms. Kuske in April 2004, he observed limited ranges of motion in her lumbar spine and knees; no evidence of redness, warmth, or effusion of any joint; moderate crepitation in both knees; a mildly antalgic gait; and mild difficulty with some postural maneuvers. An NST test in April 2004 suggested neuropathy in Ms. Kuske's lower extremities. Thus, the objective medical evidence and Ms. Kuske's treatment history were consistent with the ALJ's finding that she could perform a range of sedentary work.

The ALJ further considered other non-medical evidence in the record, including Ms. Kuske's reported daily activities and her work history. Specifically, the ALJ noted Ms. Kuske's testimony that she cooked, cleaned, washed dishes, cared for her 12 year-old daughter, used public transportation, went shopping, attended movies, went out to eat with her boyfriend, and did "a little" work in the yard. *See* SSR 96-8p (RFC assessment must be based on all relevant evidence in record, including "reports of daily activities"). The ALJ reasonably concluded that this level of activity was incompatible with a finding of total disability. As for her functional ability, Ms. Kuske testified that she had recently seen a movie and sat for two and a half hours continuously. She also said that while she was limited in the ability to use her right arm and shoulder, she was not totally precluded doing so, and that her left arm and shoulder were "fine." The ALJ also considered Ms. Kuske's work history. He noted that she had returned to work twice since her alleged disability began, and remained employed for a couple of months each time. While not indicative of her ability to perform

16

substantial gainful activity, the ALJ properly considered this work activity in assessing Ms. Kuske's RFC, as it shed light on her functional ability.

In her letters to the Court, Ms. Kuske relies on a letter from Dr. McIntire, her treating physician. On March 15, 2004, Dr. McIntire wrote a letter to the ALJ in which he opined that Ms. Kuske could not climb stairs, walk long distances, or do any type of bending or lifting. The ALJ considered this evidence, but reasonably did not give it controlling weight, because it was not supported by the objective medical evidence, as discussed above, and was inconsistent with Ms. Kuske's own testimony that she could lift five pounds. *See* 20 C.F.R. § 416.927(d)(2) (ALJ is not bound by treating source's opinion that is not well-supported by clinical and laboratory findings or is contradicted by other substantial evidence in the record). Moreover, Dr. McIntire's opinion was contradicted by those of Dr. Mahawar and the state agency physician. It is well-established that when there is conflicting medical evidence, it is the ALJ's responsibility to weigh the evidence and resolve conflicts. *See Perales*, 402 U.S. at 399; *Diaz*, 55 F.3d at 306 n.2. "When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). Here, the ALJ's decision to give greater weight to Dr. Mahawar's opinion was supported by substantial evidence.

The ALJ considered and accommodated Ms. Kuske's impairments, including her shoulder and knee pain, by finding that she could perform a reduced range of sedentary work. The ALJ's decision demonstrates that he properly assessed Ms. Kuske's RFC based on a consideration of all the relevant evidence in the record, and his RFC finding is supported by substantial evidence. Accordingly, the Court affirms the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's determination at steps four and five of the sequential disability analysis was supported by substantial evidence.  Therefore, the Court **DENIES** the Plaintiff's Brief in Support of Complaint in letter form [DE 14], [DE 17].  The Court **REAFFIRMS** the ALJ's decision in all respects.

SO ORDERED this 23rd day of January, 2006.

s/ Paul R. Cherry<br>MAGISTRATE JUDGE CHERRY<br>UNITED STATES DISTRICT COURT

cc:     All counsel of record